**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **THE HOLY SPIRIT ASSOCIATION FOR THE UNIFICATION OF WORLD CHRISTIANITY,**<br><br>                  **Plaintiff,**<br><br>      v.<br><br>**SENTINEL INSURANCE COMPANY LTD., LEE & ASSOCIATES, INC., YONG S. LEE, LEAD WAYS INSURANCE AGENCY ASSOCIATES, INC., ANDY H. CHEN, and JAMES F. CHEN,**<br><br>                  **Defendants.** | **Case No. 15 C 3423**<br><br>**Judge Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

On September 23, 2015, Plaintiff the Holy Spirit Association for the Unification of World Christianity ("HSA") filed its First Amended Complaint in this action. Defendants Andy H. Chen, James F. Chen, and Lead Ways Insurance Agency Associates, Inc. (collectively "Lead Ways") now move to dismiss the only counts pleaded against them, Count VII (negligence) and Count VIII (breach of contract) [ECF No. 41]. For the following reasons, Lead Ways' Motion is granted.

**I.  BACKGROUND**

The Court draws the following facts, which it accepts as true, from HSA's Amended Complaint. The Court also considers a February 2, 2015 denial of coverage letter from Defendant Sentinel Insurance Company, Ltd. ("Sentinel"), which was attached as an exhibit to the original Complaint,

and which Lead Ways has now attached to its Motion. Because the denial of coverage is referenced in the Amended Complaint, (*see,* Am. Compl., ECF No. 34, at 9 ¶¶ 64-65), and is central to HSA's claims that coverage was denied because of Lead Ways' misrepresentations, the Court may consider it in ruling on the Motion to Dismiss. *See, Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir. 1994) (explaining that documents attached to a motion to dismiss are considered part of the pleadings, and may be considered by a district court ruling on the motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to his claim."). This is a narrow exception to the general rule that when additional materials are attached to a motion to dismiss, the Court must either exclude them or convert the motion into one for summary judgment. *188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 735 (7th Cir. 2002) (citation omitted).

HSA is a religious organization and the owner of a property located at 7450 North Sheridan Road, on Chicago's far north side (the "Property"). When its residential fire policy for the Property was about to expire, HSA asked Defendants Yong S. Lee and Lee and Associates, Inc. (collectively, "Lee") to obtain replacement coverage. Lee obtained coverage through CNA Insurance Company and then Travelers Indemnity Company.

Before the Travelers policy expired, Lee contacted Lead Ways to obtain replacement coverage again. Lead Ways then secured coverage from Sentinel. HSA alleges that it never authorized the Sentinel policy and did not know that Lee had changed carriers.

On October 31, 2013, a fire occurred at the Property, causing nearly $200,000 in damages. During the course of Sentinel's investigation, Lead Ways represented to HSA and Lee that it was the general broker for The Hartford, Sentinel's parent company, and that it had submitted a "reformation request" so that the fire damage claim would be accepted. (Am. Compl., ECF No. 34, at 8–9 ¶¶ 59–60.) On February 2, 2015, Sentinel issued a letter denying coverage under the Policy's "concealment, misrepresentation, or fraud" clause. Specifically, Sentinel refused coverage based on misrepresentations in HSA's application indicating that the Property was used as an office rather than a residence, and misrepresentations after the loss that there were no permanent residents at the Property. (*See, id.* at 9 ¶¶ 64–65.)

In the Amended Complaint, HSA attributes these misrepresentations to both Lee and Lead Ways. HSA alleges that Lead Ways "knew the premises had been used in part for residential purposes" based on its communications with Lee, but transmitted contrary information to Sentinel. (*Id.* at 8 ¶¶ 56–57.) HSA also alleges that on November 25, 2013, Lead Ways transmitted information to Sentinel stating that there were no permanent residents living at the Property, and that the only reason people were staying overnight there on the night of the fire was "because they could not find motel accommodations." (*Id.* at 8 ¶ 59.) Finally, HSA alleges that Lee provided "false and misleading" information to Sentinel and encouraged others to do the same. In December 2013, Lead Ways specifically asked HSA questions about how the Property was being used, and on January 28, 2014, HSA informed Lead Ways that its associate

pastor and his family had been living at the Property "all the time." (*Id.* at 9 ¶ 63.)

The denial of coverage letter attributes the misrepresentations about the Property's use to Lee and HSA. The letter states that on March 5, 2012, Lee sent an email to Lead Ways stating that the Property was being used as an office, and that Lead Ways relied on this information in completing HSA's insurance application. The letter also states that on November 25, 2013, HSA informed Sentinel in writing that no permanent residents lived at the Property.

On September 9, 2015, the Court granted Lead Ways' Motion to Dismiss HSA's negligence claim, which alleged that Lead Ways breached its duty of care in failing to investigate the validity of the information that Lee provided. The Court held that absent special circumstances, Lead Ways' duty of "ordinary care and skill" did not require it to verify Lee's representations. The Court also granted Sentinel's Motion to Dismiss HSA's estoppel claim.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true, and view them in the light most favorable to the plaintiff. *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736

(7th Cir. 2014) (citation omitted). However, a court need not accept as true "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotations and alterations omitted).

### III. <u>ANALYSIS</u>

#### A. Count VII (Negligence)

In Count VII, HSA alleges that that Lead Ways breached its duty of care during the claims handling process. According to HSA, Lead Ways represented that it was the general broker for Sentinel, and that Sentinel was reviewing "the approval of the change in policy which they submitted." (Am. Compl., ECF No. 34, at 17 ¶ 78.) However, HSA alleges, Lead Ways knew that the policy would not be changed — and the claim would not be accepted — because of the false information it had provided to Sentinel. (*Id.* at 17 ¶¶ 79-80.) Lead Ways argues that it was under no duty to investigate the accuracy of information that Lee or HSA provided about how the Property was used, and that HSA fails to allege that Lead Ways actually knew the Property was a residence.

As this Court explained in its prior ruling, insurance producers, agents and brokers are bound by the same duty: to "exercise ordinary care and skill in renewing, procuring, binding, or placing" insurance coverage. *Skaperdas v. Country Cas. Ins. Co.,* 28 N.E.3d 747, 756 (Ill. 2015) (quoting 735 ILCS 5/2-2201(a)). The Court is not aware of any case holding that the duty of ordinary care requires these entities to investigate the accuracy of information submitted by insureds or their agents. Instead, "in the absence of circumstances putting a reasonable

person on inquiry, that person is justified in relying on a representation without engaging in further inquiry, especially where the misrepresentation concerns matters which may be assumed to be within the knowledge of the party making them." *Hassan v. Yusuf*, 944 N.E.2d 895, 916 (Ill. App. Ct. 2011).

HSA directs the Court's attention to several allegations in the Amended Complaint that it claims would have put Lead Ways on notice that the Property was being used for residential purposes. HSA begins by noting that Lee and Chen's relationship with HSA predates the issuance of the Sentinel policy. It then notes that on May 5, 2012, it advised Lee that it was moving its office operations to Schaumberg, Illinois. However, neither of these allegations suggests that Lead Ways knew the Property was being used for residential purposes.

The Amended Complaint contains two allegations that Lead Ways actually knew of the Property's residential nature. First, HSA alleges that "Andy Chen and Lead Ways knew that the premises had been used in part for residential purposes by virtue of their communications with Yong Lee and Lee & Associates." (Am. Compl., ECF No. 34, at 8 ¶ 56.) This conclusory allegation is insufficient, however, because it is not supported by any facts lending it plausibility. Moreover, it is contradicted by other allegations in the Amended Complaint that Lee routinely provided false information about the Property. (*See, id.* at 15 ¶ 81.e, 16 ¶ 77.e). The denial of coverage letter only underscores the implausibility of Lead Ways' knowledge. The letter states that Sentinel completed HSA's insurance application relying on false information that

Lee provided — specifically, his March 5, 2012 representation that the Property was being used as an office.

Second, HSA alleges that on January 28 2014, its associate pastor informed Lead Ways that the Property was being used for residential purposes all along. However, there are no allegations that Lead Ways hid this information from Sentinel during the investigation or otherwise failed to disclose it. To the contrary, the denial of coverage letter emphasizes that on January 28, 2014, HSA admitted to using the Property as a residence "the entire time."

HSA has failed to allege any "special circumstances" that would have put Lead Ways on notice that the Property was being used as a residence. It has also failed to plausibly allege that Lead Ways actually knew of the Property's true nature when providing information to Sentinel. For these reasons, the Court dismisses Count VII with prejudice.

### B. Count VIII (Breach of Contract)

In Count VIII, HSA alleges that Lead Ways breached an oral contract with Lee to obtain replacement coverage for the Property "for the benefit of HSA" by failing to confirm the accuracy of information in the Sentinel policy and by providing false information to Sentinel after learning how the Property was actually used. Lead Ways contends that HSA has failed to plead the existence of an underlying contract in which HSA was an intended third-party beneficiary, and in any case, has failed to plead breach.

The Court begins with the issue of breach. To state a claim for breach of contract, a plaintiff must allege (1) offer and acceptance; (2)

consideration; (3) definite and certain contract terms; (4) plaintiff's performance of all required contractual conditions; (5) defendant's breach of the terms of the contract; and (6) resulting damages. *Hirsch v. Feuer,* 299 Ill. App. 3d 1076, 1082 (Ill. App. Ct. 1998). The Amended Complaint does not describe any contract terms requiring Lead Ways to investigate the accuracy of the information it received from HSA or Lee, and as explained above, no such duty arises under Illinois law. In the absence of contract terms imposing a duty on Lead Ways to investigate the information that HSA or Lee provided, HSA has failed to state a claim for breach of contract.

As for HSA's claims that Lead Ways knowingly provided false information to Sentinel during the investigation, the Amended Complaint lacks factual support. HSA alleges that the "contrary information" Lead Ways transmitted to Sentinel includes the November 25, 2013 representation "that there were no permanent residents living at [the Property], and that the reason people were staying overnight . . . on the date of the loss was because they could not find motel accommodations after a meeting." (Am. Compl., ECF No. 34, at 8 ¶ 58.) However, the denial of coverage letter contradicts this statement, noting that "HSA Holy Spirit on November 25, 2013 represented in writing that there were no permanent residents living at [the Property] and that the reason people were staying overnight . . . on the date of the loss was because they could not find hotel accommodations after a meeting." Because the letter flatly contradicts the allegation in HSA's Amended Complaint, it controls. *See, Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir. 2013).

Although the Court has not considered the unauthenticated emails attached to HSA's response in ruling on this Motion, the Court is compelled to note that HSA's own exhibit appears to confirm that the November 25 communication came from HSA — not Lead Ways. (*See*, Ex. D to HSA Resp., ECF No. 49, at 18 ("Dear Mr. Lee, The people stayed overnight because they couldn't find motel accomodation [*sic*] after the meeting. We don't have permanent resident in the property at 7450 N. Sheridan Road."). The November 25, 2013 communication is the only example of "contrary information" that Lead Ways allegedly provided to Sentinel during the investigation. Without it, it is unclear how Lead Ways misled Sentinel.

Because HSA has failed to establish contract terms requiring Lead Ways to verify the information it received from HSA and Lee, HSA has not stated a claim for breach of contract. Count VIII is therefore dismissed with prejudice.

### IV. CONCLUSION

For the reasons stated herein, Lead Ways' Motion to Dismiss [ECF No. 41] is granted. Counts VII and VIII of HSA's Amended Complaint are dismissed with prejudice.

**IT IS SO ORDERED.**

_____
 Harry D. Leinenweber, Judge
 United States District Court

Dated: 1/25/2016

- 9 -